UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RACHAD TAHA,<br><br>Petitioner,<br><br>v.<br><br>DREW BOSTOCK, *et al.*,<br><br>Respondents. | Case No. C25-649-RSM<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff Rachad Taha's Motion for Temporary Restraining Order ("TRO") or Final Ruling on Petition for Writ of Habeas Corpus, Dkt #2. Petitioner is an immigration detainee in U.S. Immigrations Customs and Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. #2 at 2. Proceeding through counsel, he filed a habeas petition pursuant to 28 U.S.C. § 2241 on April 10, 2025. Dkt. #1. On the same day, Petitioner filed the instant Motion for TRO requesting the Court grant the Motion and order his immediate release, or, in the alternative, convert the instant Motion into a final ruling on his habeas petition and grant said petition. *See* Dkt. #2 at 18. Petitioner argues he should be released because his removal is not reasonably foreseeable, and his detention risks him "suffering numerous and irreparable harms: detention itself, separation from his family, and emotional harm." *Id*. at 6-16. Respondents oppose the Motion. Dkt. #12. For the following reasons, the Court DENIES Petitioner's Motion for TRO.

ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER - 1

## II.     BACKGROUND

Unless indicated otherwise, the following facts are taken from Petitioner's Motion for TRO, Dkt. #2.

Petitioner is a 27-year-old native of Lebanon who first entered the United States without inspection on July 16, 2023. Dkt. #4, "Declaration of Rachad Taha," at ¶ 2-5. Shortly after, he was apprehended by Border Patrol, and he expressed a fear of returning to Lebanon. He conducted a credible fear interview, where U.S. Citizenship and Immigration Services ("USCIS") determined that he did not have a reasonable possibility demonstrating he would be persecuted if returned to Lebanon. On July 26, 2023, Petitioner was ordered removed, and this USCIS decision was subsequently affirmed by an immigration judge.

Petitioner states that he "assisted ICE with efforts to obtain a travel document for his removal," but ICE was ultimately unsuccessful in executing his removal. Part of the issue was that Petitioner lacks a Lebanese passport, which he indicates was stolen in Mexico before entering the United States. Dkt. #4 at ¶ 4. Pursuant to *Zadvydas v. Davis*, since removal was not reasonably foreseeable, ICE released Petitioner from detention January 5, 2024. 533 U.S. 678 (2001) (holding when detentions appear indefinite with no reasonably foreseeable date of removal, the government must justify continued detentions beyond six months).

Petitioner's release was subject to check-ins via the Intensive Supervision Appearance Program ("ISAP"). He initially wore an ankle monitor, which was removed a few months later due to his compliance with check-ins. Eventually, Petitioner relocated to Portland, Oregon near his uncle after obtaining permission from ICE. Petitioner conducted check-ins via the BI SmartLink app by uploading photos of himself and answering phone calls from ISAP officers. Petitioner states that he responded late to two check-ins: once because his phone battery died, the other because the app malfunctioned. Dkt. #4 at ¶ 19. Defendants, however, allege that

Petitioner missed four check-ins in March 2024, December 2024, and January 2025. Dkts. #12 at 2-3 and #13, "Declaration of Deportation Officer Robert Andron," at ¶¶ 12-15.

After receiving permission, Petitioner moved in with his partner and her children in Beaverton, Oregon. Petitioner states that, throughout this time, he complied with ICE's request and made efforts to obtain a new Lebanese passport. Although he contacted family in Lebanon and the Lebanese Embassy, Petitioner's continued efforts to obtain a passport have been unsuccessful.

In December 2024, Petitioner retained a law firm in Oregon to apply for Temporary Protected Status ("TPS"). In November 2024, the Department of Homeland Security designated Lebanon as a state for TPS, meaning that Lebanon has conditions preventing nationals from safely returning, allowing eligible Lebanese nationals to apply for TPS and receive protections from removal. *See Designation of Lebanon for Temporary Protected Status*, 89 Fed. Reg. 93641 (Nov. 27, 2024). On February 4, 2025, USCIS issued notice that it received Petitioner's application on January 30, 2025.

On January 26, 2025, Petitioner received a notification via the BI SmartLink app to immediately present himself at the Portland, Oregon ICE office. Upon arrival, ICE again detained him, stating only that his name was on a list with final order of removal. When transferred to NWIPC, Petitioner states that an ICE officer told him that he was re-detained "because of Trump."

After his re-detention, Petitioner asked for updates on his removal status and his pending TPS application. In March 2025, Petitioner received a Notice of Revocation of Release stating that his re-detention was due to "changed circumstances in [his] case" because ICE had determined Petitioner could be "expeditiously removed" due to his order of removal and the "current review by Lebanon for the issuance of a travel document." Dkt. #3-10, "Declaration of

Sydney Maltese," Exhibit J. This Notice also stated that he would "promptly be afforded an informal interview . . . [and] given an opportunity to respond to the reasons for the revocation." *Id*. No interview has occurred. On April 3, 2025, Petitioner's new counsel requested his release due to his pending TPS application but received no response.

Petitioner's habeas petition and instant Motion were filed on April 10, 2025. Dkts. #1 and #2. In his petition, he asserts that he is entitled to habeas relief because he is *prima facie* eligible for TPS, his removal is not foreseeable, and his "pending TPS application and Respondent's failure to obtain a travel document thus make plain that his detention is unlawful[.]" Dkt. #1 at ¶ 4-5. In his Motion for TRO, he seeks immediate release for the same reasons asserted in his habeas petition. Dkt. #2.

### III.  DISCUSSION

#### a. Legal Standard

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Typically, for a TRO, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions

require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the "serious questions" approach supports a court's entry of a TRO only so long as the moving party also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

**b. Analysis**

The Court ultimately concludes that Petitioner has not made a clear showing that he is entitled to the extraordinary remedy that he requests because Petitioner has not met his burden to show that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 20. "The Ninth Circuit makes clear that a showing of immediate irreparable harm is essential for prevailing on a [TRO]." *Juarez v. Asher*, 556 F.Supp.3d 1181, 1191 (W.D. Wash. 2021) (citing *Caribbean Marine Co., Inc. v. Bladridge*, 844 F.2d 668, 674 (9th Cir. 1988). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Winter* at 20.

Petitioner argues that his "unlawful detention constitutes a loss of liberty that is . . . irreparable" and "inflicts substantial harm . . . by separating him from his family members . . . [and] has also taken an emotion and mental toll" on him. Dkt. #2 at 15-16 (internal quotations omitted). The Court agrees with Defendants that Petitioner's "irreparable harm-based argument begs the constitutional questions presented in his petition by assuming that [P]etitioner has suffered constitutional injury[,]" and his emotional harm from this "loss of liberty" is "common to all" like Petitioner. Dkt. #12 at 15 (quoting *Cortez v. Nielsen*, 2019 WL 1508458, at *3 (N.D. Cal. Apr. 5, 2019) and *Resendiz v. Holder*, 2012 WL 5451162, at *5 (N.D. Cal. Nov. 7. 2012)). "[A] noncitizen must show that there is a reason specific to his or her case, as opposed to a reason

that would apply equally well to all aliens and all cases, that removal would inflict irreparable harm[.]" *Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011). Though unfortunate, the Court concludes that these harms do not show immediate irreparable harm requiring the extraordinary remedy of a TRO. Furthermore, the Court does not consider Petitioner's habeas petition at this time.

## IV. CONCLUSION

Having reviewed the instant Motion, the parties' filings, and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff's Motion for Temporary Restraining Order, Dkt. #2, is DENIED.

DATED this 16th day of April, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE